UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD DWAYNE ASHFORD,<br><br>　　　　　Plaintiff,<br>v.<br><br>JAMES E. TILTON, Secretary of California Department of Corrections and Rehabilitation, et al.,<br><br>　　　　　Defendants. | Civil No. 07cv147 JM (WMc)<br><br>**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S PETITION** |

## I. Introduction and Procedural History

In this prisoner civil rights case, Edward Dwayne Ashford ("Plaintiff") is proceeding *pro se* and *in forma pauperis* ("IFP") pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915(a). Plaintiff alleges a violation of his federal constitutional rights. At issue are Plaintiff's claims that:

On April 21, 2008, Defendants Larry E. Scribner, James Tilton, Stuart J. Ryan, and George j. Giurbino moved to dismiss the Complaint. [Doc. No. 25.] After requesting and receiving an extension of time in which to oppose the motion to dismiss, Plaintiff submitted an opposition brief on June 24, 2008. [Doc. No. 31.] Defendants filed a reply on July 29, 2008. [Doc. No. 34.]

This Report and Recommendation is submitted to United States District Judge Jeffrey T. Miller, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.3 of the United States District Court for the Southern District of California. After reviewing the pleadings, parties' briefs and exhibits filed in support thereof, for the reasons set forth below, the Court recommends that the Motion to Dismiss of

Defendants be **GRANTED** and the Complaint be **DISMISSED** for failure to exhaust administrative remedies as discussed in detail below.

## II.  Factual Background

On or about May 27, 2004, Plaintiff was transferred from Pleasant Valley State Prison in Coalinga, California to Calipatria State Prison.  (Plaintiff's Complaint at para. 10.)  After Plaintiff's arrival at Calipatria, Plaintiff alleges he was subjected to "numerous retaliatory racialized lockdowns." (*Id.* at para.11.)  According to the Plaintiff, "whenever [a] Correctional Peace Officer or Correction Staff member is allegedly assaulted and battered by an inmate(s) and those inmates of that inmate(s) race are held vicariously liable by virtue of the extended lockdown they endure."  *Id.*  In fact, Plaintiff alleges he was told by Calipatria's prison officials: "When your people do something, we punich the whole lot of your people."  (*Id.* at para. 13.)  During these race-based lockdowns, "the entire affected race lose all of their privileges, e.g. no packages, no commissary, no outdoor recreation, one shower every 72 hours, no telephone while all other non-affected races, after usually an initial lockdown of all inmate[s], are released to normal program."  (*Id*. at para. 17.)

Specifically, Plaintiff alleges he was subjected to a race-based lockdown on December 19, 2006 after "two African-American inmates . . . allegedly were involved in a physical altercation with Correctional Peace officers at CSP's [Calipatria State Prison's] 'A' Facility Building Number Four." (*Id*. at para. 18.)   On December 22, 2006, inmates of all races, except for African-American inmates, were released from lockdown.  Plaintiff notes that African American inmates were kept on lockdown even though the inmates involved in the December 19, 2006 incident were transferred from Calipatria. (*Id*. at para. 19.)  Because of the extended lockdown of African-American inmates, Plaintiff was unable to use the prison commissary to purchase cough and cold medications during an illness.  (*Id.* at para. 20.)

## III. Discussion

**A.  Plaintiff's Federal Claims - No Exhaustion of Administrative Remedies per 42 U.S.C. § 1997e(a)**.

In his opposition brief, Plaintiff admits that the December 19, 2006, race-based lockdown referenced in his Complaint has not been addressed by prison officials "beyond the 'second level'" in

the administrative appeals process. (*See* Plaintiff's Opposition Brief at 6:9-14.) Plaintiff argues that, regardless of this failure to exhaust, his Complaint need not be dismissed because since his arrival at Calipatria State Prison he was "subjected to numerous retaliatory racialized lockdowns," namely in various lockdowns in June of 2005, which were documented through the 602 appeal process and fully exhausted. (Complaint at 7:1-2; Plaintiff's Opposition Brief 7:1-13.) Defendants contend that Plaintiff has not properly exhausted his administrative remedies because the only racially based lockdown identified in Plaintiff's Complaint is the unexhausted December 19, 2006 lockdown. (Defendants' Reply at 2:3-9.) Consequently, Defendants argue that without referencing the December 19, 2006 lockdown, the Complaint is an improper, non-specific, generalized Complaint about unidentified racially based lockdowns occurring at any time. ( Defendants' Reply at 2:10-21.)   42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with the exhaustion requirement is **mandatory.** *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Section 1997e(a) "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 532; *see also Booth v. Churner*, 532 U.S. 731, 739-40 & n.5 (2001) (requiring exhaustion regardless of whether the specific remedy sought by the prisoner is "available" within the administrative grievance procedure).

Nonexhaustion under Section 1997e(a) is an affirmative defense. Defendants have the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 919 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (same); *see also Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005) ("[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available,'" therefore, "a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process, or through awaiting the results of the relief already granted as a result of that process."). However, a prisoner's concession that he or she failed to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) is a valid ground for dismissal, so long as no "exception to exhaustion" applies. *Wyatt*, 315 F.3d at 1120; *but cf. Booth*, 532 U.S. at 741 n.6 (courts

may "not read futility or other exceptions into statutory exhaustion requirements where congress has provided otherwise.").

A nonexhaustion claim should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. *Wyatt*, 315 F.3d at 1119. In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. If the court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice. *Id.* at 1120.

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." *See* CAL.CODE REGS. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id.* § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *See id.* § 3084.5; *Brown*, 422 F.3d at 929-30; *see also Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). A decision from the Director's Level of review is "not appealable and concludes the inmate's or parolee's departmental administrative remedy," *Brown*, 422 F.3d at 930 n.2, and, thus, has been found sufficient to satisfy § 1997e(a). *See Barry*, 985 F. Supp. at 1237-38.

An action must be dismissed unless the prisoner exhausted his available administrative remedies before he or she filed suit, even if the prisoner fully exhausts while the suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).

The prisoner must also comply with the state's "critical procedural rules" governing its administrative grievance or appeals procedure in order to "properly exhaust." *See Woodford v. Ngo*, 126 S.Ct. 2378, 2388 (2006). "[Proper exhaustion] means ... a prisoner must complete the administrative review process in accordance with the applicable procedural rules ... as a precondition to bring[ing] suit

in federal court." *Id*. at 2386.  In *Woodford*, the Supreme Court held that a California prisoner whose grievances were rejected all the way up to the third or "Director's Level" of review based on his failure to comply with CAL. CODE REGS., tit. 15 § 3084.5's 15-day time limit for submitting CDC 602 appeals, did not "properly exhaust" and therefore, his claims were subject to dismissal pursuant to 42 U.S.C. § 1997e(a).  *Id.* at 2387-93; *cf. Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006) (reading *Woodford* to set forth two tests for "proper" exhaustion:  a "merits test" whereby the prisoner's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels," and a "compliance test" whereby the prisoner complies with all 'critical procedural rules,' including agency deadlines.  A finding that a plaintiff has met either test is sufficient for finding 'proper exhaustion'.  Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies.").

      Here, Defendants have provided sworn declarations from N. Grannis, Chief of the Inmate Appeals Branch in Sacramento and D. Bell, Appeals Coordinator at Calipatria State Prison, which demonstrate that Plaintiff has failed to properly exhaust his administrative remedies with respect to the December 19, 2006 lockdown through the third Director's Level of review.  (Decl. Of Grannis at para. 7; Decl. Of Bell at para.. 8.)  The December 19, 2006 lockdown is the only lockdown identified and specifically addressed in Plaintiff's Complaint.  Plaintiff cannot attempt to use other racial lockdowns <u>not</u> mentioned anywhere in his Complaint as a basis for the allegations therein.  Indeed, other allegations in Plaintiff's Complaint, namely allegations of insufficient medical treatment of Plaintiff's cold due to lockdown conditions, stem directly from the December 19, 2006 lockdown.  (Plaintiff's Complaint at 11:2-12:3.)  Accordingly, based on the above analysis, **IT IS RECOMMENDED** that Plaintiff's federal claims under Section 1983 be **DISMISSED** without prejudice.

      **B.**    **Plaintiff's State Law Claims**

      Plaintiff's state law claims allege violations of the California Constitution.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).  A claim for violation of state law is not cognizable under section 1983. *See Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990); *accord Ebmeier v. Stump*, 70 F.3d 1012, 1013

(8th Cir. 1995) ("We take this opportunity to emphasize that violations of state laws, state-agency regulations, and state-court orders, do not by themselves state a claim under 42 U.S.C. s 1983."). Consequently, Plaintiff's state law claims are not cognizable under section 1983 and are only before this Court pendant to Plaintiff's claims based on federal law.  However, Plaintiff's federal claims must be dismissed from the Complaint for failure to exhaust administrative remedies.

When federal law claims are removed from a lawsuit, leaving only state law claims, the Court must balance factors to be considered under the pendant jurisdiction doctrine.  Specifically, the court must consider the factors of judicial economy, convenience, fairness, and comity as set forth by the Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Imagineering, Inc. v. Kieweit Pac. Co.*, 976 F. 2d 1303, 1309 (9th Cir. 1992) (*citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 341, 353 (1988) ).  More recently, the Supreme Court has stated, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remain state law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350, n.7.  In fact, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well". *Id.* (*citing Gibbs* 383 U.S. at 726).

In the present case, Plaintiff's Complaint alleges two federal-law claims under the Eighth and Fourteenth Amendments, and three state-law claims.  The state-law claims fall within this Court's jurisdiction because they derive from the same nucleus of operative fact as the federal-law claims: Defendants' policy of race-based lockdowns.   After consideration of the factors set forth in *Gibbs*, the Court finds that in this situation, where all the underlying federal claims must be dismissed for failure to exhaust, **IT IS RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining pendant state law claims.

## IV.  Defendants' Request for Judicial Notice

Defendants request the Court take judicial notice of various state court documents they have submitted in support of their filings. Specifically, Defendants ask the Court to take judicial notice of: "Exhibit A - Edward Ashford v. Larry Scribner, Petition for writ of habeas corpus, May 1, 2006; Exhibit B - Order to Show Cause, May 24, 2006; Exhibit C - Return to writ of habeas corpus, July 24, 2006;

Exhibit D - Denial to return, February 22, 2007; and Exhibit E - Order denying writ, May 11, 2007." (Defendants' Request for Judicial Notice, p.2.)

Judicial Notice is governed by Federal Rule of Evidence 201 which concerns judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FRE 201. In other words, "the fact must be one that only an unreasonable person would insist on disputing." *United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir. 1994).

Documents that are part of the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another court case, but a court may not take judicial notice of findings of facts from another case. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n. 5 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 698 (9th Cir. 2001). Nor may the court take judicial notice of any matter that is in dispute. *Lee*, 250 F.3d at 689-90. The Court may also take judicial notice of another court's opinion "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410-426-27 (3rd Cir. 1999).

Accordingly, **IT IS RECOMMENDED** that the Court **GRANT** Defendants' request to take judicial notice of the public pleadings and orders, Exhibits A through E, in Plaintiff's state court cases.

### V. Conclusion

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order **GRANTING** Defendants' motion to dismiss.

**IT IS ORDERED** that no later than **September 2, 2008** any party to this action may file a written objection with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///

///

///

1    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and
2 served on all parties no later than **September 16, 2008**.  The parties are advised that failure to file
3 objections within the specified time may result in a waiver of the right to raise those objections on
4 appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *see also Martinez*
5 *v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

6    **IT IS SO ORDERED.**

7 DATED: August 12, 2008

              _____
              Hon. William McCurine, Jr.
              U.S. Magistrate Judge
              United States District Court

Copy to:

HONORABLE JEFFREY T. MILLER, UNITED STATES DISTRICT JUDGE
PRISONER *PRO SE* AND ALL COUNSEL OF RECORD